UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EDMOND GASTON,                                          :

              Plaintiff,                      :

          -against-                             :                    11 Civ. 4750 (AJP)

THE CITY OF NEW YORK, et al.,                           :                    **<u>OPINION AND ORDER</u>**

             Defendants.                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

        Plaintiff Edmond Gaston, represented by counsel, brings this action pursuant to 42 U.S.C. §§ 1981 and 1983 against the City of New York and Detective James George, alleging violations of his constitutional rights under the Fourth, Fifth and Fourteenth Amendments and under state law.  (Dkt. No. 6: Am. Compl.)  Gaston asserts claims of false arrest, false imprisonment and malicious prosecution under § 1983, as well as false arrest, false imprisonment and negligent hiring, training and  supervision under state law.  (Am. Compl.)[1]

        Presently before the Court is defendants' summary judgment motion.  (Dkt. No. 20: Defs. Notice of Motion; <u>see also</u> Dkt. No. 25: Defs. Br.; Dkt. No. 32: Defs. Reply Br.)  The parties

---

[1]      Gaston voluntarily dismissed his <u>Monell</u> claim against New York City (Am. Compl. ¶¶ 60-68) and all claims against the Assistant District Attorneys who prosecuted his case  (Am. Compl. ¶¶ 81-97).  (Dkt. No. 8: 11/23/11 Stip. & Order of Dismissal; Dkt. No. 21: Krasnow 1/27/12 Aff. Ex. E: 12/15/11 Conf. Tr. at 5-6; Dkt. No. 24: Defs. Rule 56.1 Stmt. ¶¶ 5-6; Dkt. No. 28: Gaston Br. Ex. 1: Gaston Rule 56.1 Stmt. ¶¶ 5-6.)  Gaston also voluntarily dismissed all claims against Sergeant Kevin  Hoare.  (Dkt. No. 19: 1/20/12 Stip. & Order of Dismissal.)

have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 15.)

For the reasons set forth below, defendants' summary judgment motion is GRANTED.

## FACTS

At 1:35 a.m. on November 4, 2010, B.D. left work and walked down Soundview Avenue in the Bronx to a check cashing establishment.  (Dkt. No. 22: George Aff. ¶ 6(a); Dkt. No. 24: Defs. Rule 56.1 Stmt. ¶ 16(a); Dkt. No. 28: Gaston Br. Ex. 1: Gaston Rule 56.1 Stmt. ¶ 16(a); see also Gaston Rule 56.1 Stmt. ¶ 71(a).)  After obtaining $40, B.D. walked towards the James Monroe Houses to purchase marijuana.  (George Aff. ¶ 6(b); Defs. & Gaston Rule 56.1 Stmts. ¶ 16(b).)  B.D. noticed a white SUV following her as she walked.  (Defs. & Gaston Rule 56.1 Stmts. ¶ 16(c).)  At 2:15 a.m., a man approached B.D. from behind while she was in the development's courtyard.  (George Aff. ¶ 6(b)-(c); Defs. & Gaston Rule 56.1 Stmts. ¶ 16(d); see also Gaston Rule 56.1 Stmt. ¶ 71(c).)  The man was holding an object concealed in a plastic bag and stated "'Come with me or I'll shoot you.  The gun has a silencer.'"  (Defs. & Gaston Rule 56.1 Stmts. ¶ 16(d)-(e); see also Gaston Rule 56.1 Stmt. ¶ 78.)  B.D. believed that the concealed object was a weapon.  (Defs. & Gaston Rule 56.1 Stmts. ¶ 16(d).)  The man forced B.D. into a white SUV, drove her to a secluded portion of Bruckner Plaza and forcibly raped her.  (George Aff. ¶ 6(c); Defs. & Gaston Rule 56.1 Stmts. ¶ 16(f); see also Gaston Rule 56.1 Stmt. ¶ 71(e).)  The man took B.D.'s money and iPod, ordered her out of the SUV, and told her to count to fifty while he fled.  (George Aff. ¶ 6(d); Defs. & Gaston Rule 56.1 Stmts. ¶ 16(g)-(h).)  B.D. called her mother at approximately 2:40 a.m. and told her what happened.  (George Aff. ¶ 6(e); Defs. & Gaston Rule 56.1 Stmts. ¶ 16(i).)

At 4:30 a.m., B.D. reported the rape to the 43rd Precinct.  (Dkt. No. 23: Evans Aff. ¶ 3; Defs. & Gaston Rule 56.1 Stmts. ¶ 8; see also Gaston Rule 56.1 Stmt. ¶ 70.)  Detectives John Evans and Scott Manga interviewed B.D. at 5:30 a.m. at Jacobi Hospital.  (Evans Aff. ¶ 4; Defs. & Gaston Rule 56.1 Stmts. ¶ 9.)  Later that morning, Detective James George was assigned as lead detective investigating the rape.  (Dkt. No. 21: Krasnow 1/27/12 Aff. Ex. G: George Dep. at 14[2]; George Aff. ¶ 2; Defs. & Gaston Rule 56.1 Stmts. ¶ 12.)  Dets. Evans and Manga informed Det. George that B.D. said she was raped inside a vehicle at Bruckner Plaza and that a gun might have been involved.  (George Dep. at 16; Evans Aff. ¶ 5; Defs. & Gaston Rule 56.1 Stmts. ¶¶ 12-13.)  During an interview at 10:05 a.m. inside the Bronx Special Victim's Unit, B.D. told Det. George about the rape and described the perpetrator as "a black male, approximately 40-45 years old, wearing a sweatshirt with a hood."  (George Dep. at 18-19, 21-24;  George Aff. ¶ 6; Defs. & Gaston Rule 56.1 Stmts. ¶¶ 16(a)-(i), 18; see also Gaston Rule 56.1 Stmt. ¶ 73.)

Based on B.D.'s description and the crime location, Det. George created photo arrays using NYPD's Photo Manager system.  (George Dep. at 25-28, 135-37; Defs. & Gaston Rule 56.1 Stmts. ¶¶ 20-21.)[3]  Det. George showed B.D. the photo arrays, each containing six photos, and asked her to "let him know if she recognized anyone that could help with the investigation."  (George Dep. at 34-35, 38-39; George Aff. ¶ 7; Defs. & Gaston Rule 56.1 Stmts. ¶¶ 22-23.)  After viewing photo arrays for thirty minutes, B.D. identified an individual as the rapist and started crying.  (George Dep. at 38, 40; George Aff. ¶ 7 & Ex. J; Defs. & Gaston Rule 56.1 Stmts. ¶¶ 24-25.)  Outside of B.D.'s

---

[2]     Portions of Det. George's deposition can also be found at Dkt. No. 30: Prestia Aff. Ex. B.

[3]     Photo Manager is "a computer program that compiles photo arrays of individuals based on variables entered by the officer such as physical characteristics of the suspect, type of offense, and residency in a particular NYPD command."  (Defs. Rule 56.1 Stmt. ¶ 20.)

presence, Det. George determined that B.D. had identified plaintiff Edmond Gaston, a 45-year old black male who was a registered sex offender for a previous sex abuse and forcible touching conviction.  (George Aff. ¶ 9; George Dep. at 43-44; Defs. & Gaston Rule 56.1 Stmts. ¶¶26-27.) After obtaining Gaston's last-known address from the Sexual Offender Monitoring Unit, Det. George realized that Gaston "lived less than half a mile from the scene of the abduction and approximately one mile from the scene of the assault."  (George Dep. at 44-45; George Aff. ¶¶ 10-12; Defs. & Gaston Rule 56.1 Stmts. ¶¶ 28-29.)

Later that day, Det. George and Sergeant Kevin Hoare went to Gaston's last-known address to bring him in for a lineup.  (George Dep. at 44, 47; Defs. & Gaston Rule 56.1 Stmts. ¶ 30.) Det. George noticed three white SUVs parked near Gaston's address.  (George Dep. at 130, 167-68; Defs. & Gaston Rule 56.1 Stmts. ¶ 31.)  Gaston's wife Rosenie Edmond informed Det. George that Gaston was at work and that on the previous night, Gaston had returned home from work at 3:00 a.m.  (George Dep. at 47-48, 52; Defs. & Gaston Rule 56.1 Stmts. ¶¶ 32-34; Dkt. No. 29: Edmond Aff. ¶¶ 4-6.)[4/]  After Edmond called and told Gaston that the police were looking for him, Gaston left work and went to his attorney's office.  (Defs. & Gaston Rule 56.1 Stmts. ¶¶ 35-36.) Gaston informed Det. George that he had retained counsel and could be picked up at his attorney's office.  (Defs. & Gaston Rule 56.1 Stmts. ¶ 37; see also Gaston Rule 56.1 Stmt. ¶ 87.)  Det. George picked up Gaston and drove Gaston and Edmond to the Bronx Special Victim's Unit.  (George Dep. at 52-53, 56; Defs. & Gaston Rule 56.1 Stmts. ¶¶ 38-39, 43; Edmond Aff. ¶ 12; Dkt. No. 30: Prestia Aff. Ex. A: Gaston Dep. at 65, 68.)  While obtaining Gaston's pedigree information, Det. George

---

[4/]     Edmond claims that she told the police that Gaston "was working at the night before" and came home "about 2:30 a.m.," "straight . . . after work."  (Edmond Aff. ¶ 6.)

noticed that Gaston spoke with an accent.  (George Dep. at 149; Defs. & Gaston Rule 56.1 Stmts. ¶ 46.)  Det. George prepared the lineup, letting Gaston pick his own seat and making Gaston and the fillers wear black stocking caps.  (George Dep. at 67, 72; Defs. & Gaston Rule 56.1 Stmts. ¶¶ 45, 48, 50-51; Gaston Dep. at 70.)  After B.D. viewed the lineup and identified Gaston as the man who attacked her, Det. George arrested Gaston for forcible rape, unlawful imprisonment and weapons possession.  (George Dep. at 74-75, 78; Defs. & Gaston Rule 56.1 Stmts. ¶¶ 52, 54.)

Det. George completed the arrest paperwork and met with an Assistant District Attorney to draft and sign a felony complaint based on B.D.'s allegations.  (George Dep. at 80-81; George Aff. ¶ 13; Defs. & Gaston Rule 56.1 Stmts. ¶¶ 55-57; see also Gaston Rule 56.1 Stmt. ¶ 113.)[5/]  Gaston was remanded at his November 5, 2010 arraignment and remained in custody for eight days.  (Defs. & Gaston Rule 56.1 Stmts. ¶ 58; Gaston Dep. at 78-79; Dkt. No. 33: Krasnow 3/2/12 Aff. Ex. A: Gaston 50-H Hearing Tr. 21.)

After being released, Gaston and his attorney met with two Assistant District Attorneys and told them that Gaston had returned home from work that night at approximately 2:20 a.m. and that he used public transportation because he did not have a car.  (Defs. & Gaston Rule 56.1 Stmts. ¶¶ 59-60; Gaston Dep. at 48, 80-82.)[6/]  One of the prosecutors wrote the word "silencer" on a piece of paper and asked Gaston to pronounce it; Gaston pronounced it with the French pronunciation "silencie."  (Defs. & Gaston Rule 56.1 Stmts. ¶¶ 61-62; Gaston Dep. at 83-84.)

---

[5/]    At some point after Gaston's arrest, Det. George inspected the November 4, 2010 video surveillance of Bruckner Plaza and saw the vehicle that B.D. described, but could not see a clear view of the driver or the license plate.  (George Dep. at 120-24; George Aff. ¶ 14; Defs. & Gaston Rule 56.1 Stmts. ¶¶ 65-66; see also Gaston Rule 56.1 Stmt. ¶ 107.)

[6/]    Gaston has a learner's permit but not a driver's license, has never driven a car, and does not own a car.  (Gaston Rule 56.1 Stmt. ¶¶ 110-11; Gaston Dep. at 48.)

The Bronx District Attorney's Office dismissed the charges against Gaston on February 23, 2011 after another man admitted to the rape. (Dkt. No. 6: Am. Compl. ¶¶ 48-51; Defs. & Gaston Rule 56.1 Stmts. ¶ 68.)

## ANALYSIS

## I.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P . 56(a); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Ret. Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . .

is generally disputed." Fed. R. Civ. P. 56(c); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.

2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'" (citations omitted)),

cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

   In evaluating the record to determine whether there is a genuine issue as to any

material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are

to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[7/]

The Court draws all inferences in favor of the nonmoving party only after determining that such

inferences are reasonable, considering all the evidence presented. See, e.g., Apex Oil Co. v.

DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987). "If, as to

the issue on which summary judgment is sought, there is any evidence in the record from any source

from which a reasonable inference could be drawn in favor of the nonmoving party, summary

judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

   In considering a motion for summary judgment, the Court is not to resolve contested

issues of fact, but rather is to determine whether there exists any disputed issue of material fact. See,

e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v.

U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987).

To evaluate a fact's materiality, the substantive law determines which facts are critical and which

facts are irrelevant. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.

While "disputes over facts that might affect the outcome of the suit under the governing law will

---

[7/]  See also, e.g., Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM
Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d
at 1223.

properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

## II.   DET. GEORGE'S SUMMARY JUDGMENT MOTION IS GRANTED AS TO GASTON'S FALSE ARREST AND FALSE IMPRISONMENT CLAIMS

Gaston asserts claims for false arrest and false imprisonment pursuant to § 1983 and New York law. (Dkt. No. 6: Am. Compl. ¶¶ 54-59, 69-74.)[8/] Det. George moves for summary judgment, arguing that he had probable cause to arrest Gaston for rape. (Dkt. No. 25: Defs. Br. at 4-9; Dkt. No. 32: Defs. Reply Br. at 4-10.)

### A.   Legal Standard Governing False Arrest Claims

To prevail in a § 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988). "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), cert. denied, 512 U.S. 1240, 114 S. Ct. 2749 (1994); see, e.g., Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist., 423 F.3d 153, 159 (2d Cir. 2005); Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).[9/]

---

[8/]   Although Gaston claims both false arrest and false imprisonment (Dkt. No. 6: Am. Compl. ¶¶ 55, 58), "false arrest is considered a kind of false imprisonment, and the claims are analyzed in identical fashion."  Mitchell v. Home, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005); accord, e.g., Terio v. Michaud, 10 Civ. 4276, 2010 WL 6032586 at *3 n.4 (S.D.N.Y. Dec. 3, 2010), report & rec. adopted, 2011 WL 868661 (S.D.N.Y. Mar. 10, 2011).

[9/]   See also, e.g., Santiago v. Pressley, 10 Civ. 4797, 2011 WL 6748386 at *2 (S.D.N.Y. Dec. (continued...)

"It is now far too late in our constitutional history to deny that a person has a clearly established right not to be arrested without probable cause." Cook v. Sheldon, 41 F.3d 73, 78 (2d Cir. 1994); accord, e.g., Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997).

"'A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law.'" Covington v. City of N.Y., 171 F.3d 117, 122 (2d Cir.) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)), cert. denied, 528 U.S. 946, 120 S. Ct. 363 (1999); see also, e.g., Jenkins v. City of N.Y., 478 F.3d 76, 84 (2d Cir. 2007); Boyd v. City of N.Y., 336 F.3d 72, 75 (2d Cir. 2003); Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003); Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002); Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992).

"Under New York state law, to prevail on a claim of false arrest a plaintiff must show that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" Jocks v. Tavernier, 316 F.3d at 134-35 (quoting Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93, cert. denied, 423 U.S. 929, 96 S. Ct. 277 (1975)); see, e.g., Golio v. Suggs, 285 F. App'x 773, 774-75 (2d Cir. 2008); Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004); Covington v. City of N.Y., 171 F.3d at 122 ("Under New York law, 'a plaintiff claiming false arrest

---

9/      (...continued)
23, 2011); Elliott v. City of N.Y., 06 Civ. 0296, 2008 WL 4178187 at *7 (S.D.N.Y. Sept. 8, 2008); Hill v. Melvin, 05 Civ. 6645, 2006 WL 1749520 at *10 (S.D.N.Y. June 27, 2006) (Peck, M.J.), aff'd, 323 F. App'x 61 (2d Cir. 2009); Ramashwar v. Espinoza, 05 Civ. 2021, 2006 WL 23481 at *6 (S.D.N.Y. Jan. 5, 2006) (Peck, M.J.), aff'd, 231 F. App'x 26 (2d Cir. 2007).

must show, inter alia, that the defendant intentionally confined him without his consent and without justification.'" (quoting Weyant v. Okst, 101 F.3d at 852)); Marshall v. Sullivan, 105 F.3d 47, 50 (2d Cir. 1996); Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995), cert. denied, 517 U.S. 1189, 116 S. Ct. 1676 (1996).

"Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006).[10] "Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Escalera v. Lunn, 361 F.3d at 743 (quoting Weyant v. Okst, 101 F.3d at 852).[11] "Defenses which negate the existence of a crime should similarly negate probable cause" for an arrest. Jocks v. Tavernier, 316 F.3d at 135.

---

[10]    Accord, e.g., Alvarado v. City of N.Y., No. 10-3908-CV, 2011 WL 6318027 at *1 (2d Cir. Dec. 19, 2011); Jean v. Montina, 412 F. App'x 352, 353 (2d Cir. 2011); Jenkins v. City of N.Y., 478 F.3d at 84; Escalera v. Lunn, 361 F.3d at 743; Caldarola v. Calabrese, 298 F.3d at 161; Kent v. Katz, 312 F.3d 568, 573 (2d Cir. 2002); Covington v. City of N.Y., 171 F.3d at 121; Marshall v. Sullivan, 105 F.3d at 50; Weyant v. Okst, 101 F.3d at 852; Singer v. Fulton Cnty. Sheriff, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); Bernard v. United States, 25 F.3d 98, 102, 104 (2d Cir. 1994) ("the existence of [probable cause] is a complete defense to an action for false arrest"); Fox v. City of N.Y., 03 Civ. 2268, 2004 WL 856299 at *4-5 (S.D.N.Y. Apr. 20, 2004); Greenfield v. City of N.Y., 99 Civ. 2330, 2000 WL 124992 at *5 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.); Shaw v. City of N.Y., 95 Civ. 9325, 1997 WL 187352 at *3 (S.D.N.Y. Apr. 15, 1997) (Peck, M.J.); Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 354 (S.D.N.Y. 1992) ("under New York law, 'probable cause serves as a complete defense to the charges of false arrest and malicious prosecution'"), aff'd, 993 F.2d 1534 (2d Cir.), cert. denied, 510 U.S. 817, 114 S. Ct. 68 (1993).

[11]    Accord, e.g., Alvarado v. City of N.Y., 2011 WL 6318027 at *1; Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 139 (2d Cir. 2010); Jenkins v. City of N.Y., 478 F.3d at 84; Jaegly v. Couch, 439 F.3d at 152; Boyd v. City of N.Y., 336 F.3d at 75-76; Caldarola v. Calabrese, 298 F.3d at 162; Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001); Marshall v. Sullivan, 105 F.3d at 54.

**B.** **Det. George is Granted Summary Judgment Because He had Probable Cause to Arrest Gaston**

Det. George argues that he had probable cause to arrest Gaston because B.D. gave a statement describing the attack and picked Gaston out of a photo array and lineup.  (Dkt. No. 25: Defs. Br. at 4-9; Dkt. No. 32: Defs. Reply Br. at 4-10.)

"'Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 139 (2d Cir. 2010); see also cases cited on page 10 & n.11 above.  "'When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it,' as '[p]robable cause does not require absolute certainty.'" Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (citation omitted).[12/]  Additionally, "[c]ourts should look to the 'totality of the circumstances' and 'must be aware that probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules.'" Panetta v. Crowley, 460 F.3d at 395.[13/]  "'When information is received from a putative victim or an

---

[12/]    Accord, e.g., Mathis v. Marshall, 08 Civ. 3991, 2012 WL 388539 at *28 (S.D.N.Y. Jan. 30, 2012) ("The probable cause determination must be made by looking at 'what the officer knew at the time of the arrest and whether the officer was reasonable in relying on that knowledge.'"); Castro v. Cnty. of Nassau, 739 F. Supp. 2d 153, 167 (E.D.N.Y. 2010); Bryant v. Crowe, 697 F. Supp. 2d 482, 488 (S.D.N.Y. 2010).

[13/]    Accord, e.g., Felmine v. City of N.Y., No. 09-CV-3768, 2011 WL 4543268 at *7 (E.D.N.Y. Sept. 29, 2011); Bryant v. Crowe, 697 F. Supp. 2d at 490; Celestin v. City of N.Y., 581 F. Supp. 2d 420, 430 (E.D.N.Y. 2008)

eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity.'" Feehan v. Lengyel, 278 F. App'x 47, 49 (2d Cir. 2008).[14/]

       Here, B.D. met with Det. George hours after she was attacked, described the incident in detail and identified Gaston in both a photo array and a lineup.  (See pages 3-5 above.)  This evidence established probable cause to arrest Gaston.  See, e.g., Virgil v. Town of Gates, No. 10-4971-cv, 2012 WL 29273 at *1 (2d Cir. Jan. 6, 2012) ("A victim's identification of an assailant is, by itself, sufficient 'probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.'"); Rizzo v. Edison, Inc., 172 F. App'x 391, 393 (2d Cir. 2006) ("'Both New York State and federal courts have held that a purported crime victim's identification of the alleged culprit will generally suffice to create probable cause to arrest.'"); Ackridge v. New Rochelle City Police Dep't, 09 Civ. 10396,  2011 WL 5101570 at *1 (S.D.N.Y. Oct. 25, 2011) ("The victim's identification from a photo array is sufficient to provide probable cause to arrest."); Garrett v. City of N.Y., 10 Civ. 2689, 2011 WL 4444514 at *4 (S.D.N.Y. Sept. 26, 2011) ("The fact that the victim identified the plaintiff in a photo array and a line-up gave [the detective] probable cause to arrest the plaintiff."); Parisi v. Suffolk Cnty., No. 04-CV-2187, 2009 WL 4405488 at *7 (E.D.N.Y. Nov. 30, 2009) ("[P]robable cause for arrest has often been found by courts where only oral statements and descriptions were provided by the alleged victim."); Thompson v. City of N.Y., 603 F. Supp. 2d 650, 657 (S.D.N.Y. 2009) (granting summary judgment for defendant because the victim's "identification of [plaintiff] provided ample probable cause for [his] arrest."); Smith v. City of N.Y., 388 F. Supp.

---

[14/]    Accord, e.g., Awelewa v. New York City, 11 Civ. 778, 2012 WL 601119 at *3 (S.D.N.Y. Feb. 23, 2012); White v. Bellnier, No. 09-CV-744, 2011 WL 6780995 at *9 (E.D.N.Y. Dec. 27, 2011); Jones v. King, 10 Civ. 0897, 2011 WL 4484360 at *7 (S.D.N.Y. Sept. 28, 2011); Guthrie v. U.S. Gov't, 11 Civ. 211, 2011 WL 832251 at *3 (S.D.N.Y. Mar. 2, 2011).

2d 179, 185 (S.D.N.Y. 2005) (Detective "had probable cause to arrest [plaintiff] . . . based on [the victim's] in-person identification of [plaintiff] and her description of the alleged rape.").

In addition to B.D.'s statement and identifications, there was other evidence supporting a probable cause finding.  Specifically, after B.D. picked Gaston out of the photo array, Det. George determined that Gaston "lived less than half a mile from the scene of the abduction and approximately one mile from the scene of the assault." (See page 4 above.)  Moreover, parked near Gaston's home Det. George observed three white SUVs that fit the description of the vehicle used by the perpetrator. (See page 4 above.)  Thus, considering the "totality of the circumstances," Det. George had probable cause to arrest Gaston.

Gaston claims, however, that Det. George had reason to doubt B.D.'s veracity because she did not say that the perpetrator had an accent, whereas Gaston had a "heavy Creole accent and a limited mastery of the English language." (Dkt. No. 28: Gaston Br. at 7, 14-17.)  Once Det. George had probable cause from B.D.'s statement and identifications (see page 12 above), however, the fact that Gaston had an accent is not enough to negate probable cause.[15/]  See, e.g., Little v. City of N.Y., 487 F. Supp. 2d 426, 439 (S.D.N.Y. 2007) (Chin, D.J.) (Notwithstanding that the victims provided details of the robbery and identified plaintiff, "plaintiff nevertheless argues that no reasonable officer could have believed that he or she had probable cause because the complainants stated that the perpetrators 'spoke in broken Spanish,' and plaintiff did not speak in broken Spanish. This argument is rejected.  An officer 'is not required to explore and eliminate every theoretically

---

[15/] To the extent Gaston argues that Det. George knew prior to the lineup that Gaston did not have an accent (see Gaston Br. at 7, 14-15), this claim is irrelevant.  There is no evidence, and Gaston does not claim, that Det. George knew about Gaston's accent before B.D.'s photo array identification.  As noted on pages 15-16 below, B.D.'s photo array identification was enough to establish probable cause to arrest Gaston.

plausible claim of innocence before making an arrest.'  The victims of both robberies identified

plaintiff as the robber; this was sufficient for probable cause.  In the circumstances here, the fact that

plaintiff does not speak in broken Spanish is not enough to negate the existence of probable cause."

(citations omitted)); see also, e.g., Bourne v. Cnty. of Nassau, No. CV 05-6067, 2009 WL 152658

at *6 (E.D.N.Y. Jan. 20, 2009) (Even assuming that the informant's description stated that the

perpetrator had a Jamaican accent, which plaintiff did not, it would not negate probable cause based

on informant's identification of plaintiff, because "'[o]nce officers possess facts sufficient to

establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury.

Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt

through a weighing of the evidence.'"); Williams v. City of N.Y., 02 Civ. 3693, 2003 WL 22434151

at *4 (S.D.N.Y. Oct. 23, 2003) (While an eyewitness stated that the perpetrator had a Jamaican

accent, which plaintiff did not, it was not enough to negate probable cause where the victim

unequivocally identified the plaintiff in a photo array and lineup and the detective had no reason to

question the victim's statement.), aff'd, 120 F. App'x 388 (2d Cir. 2005).

       Gaston also argues that Det. George had reason to question B.D.'s veracity because

she was "upset and crying" when she spoke with Det. George, but he "ignored all efforts to ascertain

the victim[']s state of mind before he proceeded to show [her] a photo array."  (Gaston Br. at 3-4,

16.)  This claim is unavailing because "courts have been reluctant to doubt the veracity of a

complaining victim based upon the short duration of an encounter or a victim's emotional distress

as a result of a crime." Pierre v. City of N.Y., No. 05-CV-5018, 2007 WL 2403573 at *8 (E.D.N.Y.

Aug. 17, 2007) (The fact that the victim was "distraught and upset when he reported the events to

the police" did not negate probable cause and was not sufficient reason for the police to have

"doubted or discredited" the victim's account;); see also, e.g., Feinberg v. City of N.Y., 99 Civ. 12127, 2004 WL 1824373 at *3 (S.D.N.Y. Aug. 13, 2004) (granting summary judgment for the officer and rejecting plaintiff's argument that the victim "was an emotional young woman who was not credible" because "[i]t is the function of the factfinder, not the arresting officer, to decide whether the complainant's story is credible.").[16]

Gaston next argues that Det. George "could not reasonably have relied on the lineup to establish probable cause because the lineup was so improperly conducted." (Gaston Br. at 17-19.) Specifically, Gaston argues that the lineup was suggestive because there was only one filler who was Gaston's age (45) even though B.D. described the perpetrator as in his forties. (Gaston Br. at 17-18.) Moreover, Gaston claims that this "'older' filler" had a "noticeabl[y] lighter complexion" than Gaston. (Gaston Br. at 17-18.)

This claim is rejected. Even assuming that the lineup was suggestive,[17] Det. George still had probable cause to arrest Gaston based solely on B.D.'s photo array identification. See, e.g.,

---

[16]    Gaston also claims that Det. George should not have relied on B.D.'s identification because her physical description of the perpetrator was "consistently vague" and "bereft of detail," which should have alerted Det. George that she had a "diminished view of the assailant." (Gaston Br. at 4-5, 14, 16.) This claim is meritless. As noted on page 3 above, B.D. gave a detailed description of her attacker as "a black male, approximately 40-45 years old, wearing a sweatshirt with a hood." Moreover, although the attacker initially approached B.D. from behind, B.D. had ample opportunity to view the attacker during the nearly twenty-five minute ordeal. (See page 2 above.)

[17]    While defendants attach a photo of the lineup (Dkt. No. 22: George Aff. Ex. F: Lineup Photo), the photo is too dark to aid the Court in determining "whether the appearance of the accused, matching descriptions given by the witness, so stood out from all of the other[s] . . . as to suggest to an identifying witness that [that person] was more likely to be the culprit." United States v. Wong, 40 F.3d 1347, 1359-60 (2d Cir. 1994) (quotations omitted), cert. denied, 514 U.S. 1113, 515 U.S. 1137, 516 U.S. 870, 115 S. Ct. 1968 & 2568, 116 S. Ct. 190 (1995). As noted in the text above, however, Det. George had probable cause to arrest Gaston based solely on B.D.'s photo array identification.

Ackridge v. New Rochelle City Police Dep't, 2011 WL 5101570 at *1 ("The victim's identification from a photo array is sufficient to provide probable cause to arrest."); Mitchell v. Lempke, No. 10-CV-1696, 2010 WL 3937306 at *7 (E.D.N.Y. Oct. 4, 2010) ("[I]t is clear that [the victim's] identification of [petitioner] from the photo array provided probable cause for his arrest in this case."); Paige v. Moskalik, 07 Civ. 7381, 2010 WL 6466052 at *5 (S.D.N.Y. Apr. 28, 2010) (A "positive photo identification by an eyewitness is legally sufficient to establish probable cause to arrest."), report & rec. adopted, 2011 WL 1362120 (S.D.N.Y. Apr. 8, 2011); Davis v. Metro. Transp. Auth., No. 06-CV-3643, 2010 WL 1049426 at *4 (E.D.N.Y. Mar. 22, 2010) (The victim "identified plaintiff from a photo array, thus establishing probable cause to arrest and detain him."); People v. Radcliffe, 23 A.D.3d 301, 301, 808 N.Y.S.2d 22, 23 (1st Dep't 2005) ("When the victim identified defendant's photo from an array, this provided the police with probable cause to arrest defendant."); appeal denied, 6 N.Y.3d 817, 812 N.Y.S.2d 456 (2006).

Gaston further contends that Det. George did not have probable cause because Gaston's wife provided an alibi when she told Det. George that Gaston was home about 2:30 a.m. (Gaston Br. at 6, 14-16.)  Gaston also claims that he told Det. George to look at his time sheet from work (Gaston Br. at 21 & Ex. 1: Gaston Rule 56.1 Stmt. ¶ 45; Dkt. No. 30: Prestia Aff. Ex. A: Gaston Dep. Errata Sheet), which presumably would have supported Gaston's claimed alibi.

This claim is meritless because the police have "no obligation to investigate" a defendant's alibi and "any failure to do so would not have vitiated the existence of probable cause." Nelson v. Hernandez, 524 F. Supp. 2d 212, 224 (E.D.N.Y. 2007); see also, e.g., Brodie v. Fuhrman, No. 07-CV-4212, 2010 WL 1189347 at *7 (E.D.N.Y. Mar. 29, 2010) ("[P]laintiff contends that [the detective] did not have probable cause because he failed to investigate plaintiff's alibi.  However,

an officer is not required 'to investigate exculpatory defenses offered by the person being arrested . . . before making an arrest.'"); <u>Celestin</u> v. <u>City of N.Y.</u>, 581 F. Supp. 2d at 432 (Detective "was not required to investigate [plaintiff's] alibi or exhaustively search for other suspects before acting on the facts at hand" because "once the evidence establishes probable cause, an officer is not required to continue investigating, sifting and weighing information, nor is an officer obligated to investigate the suspect's plausible claims of innocence."); <u>Drummond</u> v. <u>Castro</u>, 522 F. Supp. 2d 667, 678 (S.D.N.Y. 2007) ("While [plaintiff] points to his alibi for the evening of the crime and the character reference given by his employer as evidence that should weigh further against a finding of probable cause to prosecute following his arrest, the Court finds that these factors do not suffice to defeat Defendants' showing of probable cause. . . . [T]he surviving witness's identification of Plaintiff established an objectively reasonable basis for a finding of probable cause to arrest and prosecute Plaintiff.  While evidence of Plaintiff's character and whereabouts on the night of the crime are certainly factors that would be weighed carefully at trial, they do not undermine the previously established basis for a finding of probable cause to arrest and prosecute Plaintiff.").[18]

Gaston also argues that Det. George failed to properly investigate because he failed to:  (1) search DMV records to determine if Gaston had a license or owned/registered a vehicle; (2) run the plates of the three white SUVs parked near Gaston's home to see if they belonged to Gaston

---

[18]  Moreover, the purported alibi fails to demonstrate that Gaston could not have committed the rape.  As noted on page 2 above, B.D. told Det. George that she was attacked by the perpetrator at 2:15 a.m. and driven to a secluded portion of Bruckner Palza where she was forcibly raped.  Det. George knew that Gaston "lived less than half a mile from the scene of the abduction and approximately one mile from the scene of the assault."  (<u>See</u> page 4 above.)  Consequently, given the time of the attack and the close proximity to Gaston's home, the fact that Gaston came home "about 2:30 a.m." does not establish that Gaston could not have committed the rape.  While B.D. called her mother at 2:40 a.m. and told her about the rape (<u>see</u> page 2 above), it is unclear whether B.D. made the call immediately after the attack.

or were stolen; (3) obtain the video surveillance from Bruckner Plaza before arresting Gaston; and (4) conduct a voice lineup.  (Gaston Br. at 8-12, 16.)

These claims are meritless.  As the Second Circuit has noted: "If probable cause is established, there is no constitutional right, whether under the Fourth or Fourteenth Amendment, to demand further investigation before arrest or prosecution."  Virgil v. Town of Gates, 2012 WL 29273 at *4; accord, e.g, Jean v. Montina, 412 F. App'x 352, 354 (2d Cir. 2011) (Police were not "'required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'"); Gleis v. Buehler, 374 F. App'x 218, 220 (2d Cir. 2010) ("'[O]nce an officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'").[19]  As noted on pages 12-13 above, Det. George had probable cause to arrest Gaston based on B.D.'s description of the attack and her photo array and lineup identifications.   "'[O]nce probable cause is established the police do not have to endeavor to negate it.'"  Castro v. Cnty. of Nassau, 739 F. Supp. 2d at 167.

Accordingly, Det. George is entitled to summary judgment on Gaston's false arrest and false imprisonment claims.

---

[19]     See also, e.g., Pearson v. Lorancaitis, No. 09cv1641, 2012 WL 162355 at *10 (D. Conn. Jan. 19, 2012) ("Contrary to Plaintiffs' argument, once the Defendant Officers had a sufficient basis to believe there was probable cause, they were not obligated to further investigate [plaintiff's] protestations of innocence."); Dudley v. Torres, No. 05 CV 1729, 2008 WL 2149603 at *5 (E.D.N.Y. May 21, 2008) ("[P]olice officers who have probable cause to arrest are not required to adjudicate disputed issues of fact on the spot, nor are they required to walk away.  Once a police officer has probable cause, he need not explore every theoretically plausible claim of innocence before making an arrest." (quotations omitted)).

## III.   DET. GEORGE'S SUMMARY JUDGMENT MOTION IS GRANTED AS TO GASTON'S § 1983 MALICIOUS PROSECUTION CLAIM

Gaston also asserts a claim against Det. George for malicious prosecution pursuant to § 1983.  (Dkt. No. 6: Am. Compl.  ¶¶ 78-80.)  Det. George moves for summary judgment, arguing that he had probable cause to arrest Gaston.  (Dkt. No. 25: Defs. Br.at 11-14; Dkt. No. 32: Defs. Reply Br. at 10.)

### A.   Legal Standard Governing Malicious Prosecution Claims

"The Second Circuit has held that '[f]reedom from malicious prosecution is a constitutional right that has long been clearly established.'"  Winn v. McQuillan, 390 F. Supp. 2d 385, 389-90 (S.D.N.Y. 2005) (quoting Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003)). "Claims for . . . malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for . . . malicious prosecution under [New York] state law." Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003).[20/]  To state a claim for malicious prosecution under New York law, the plaintiff must show: (1) "the defendant initiated a criminal proceeding"; (2) the proceeding terminated in plaintiff's favor; (3) "there was no probable cause for the criminal charge"; and (4) the defendant acted maliciously. Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004); see, e.g., Jean v. Montina, 412 F. App'x 352, 354 (2d Cir. 2011); Hargroves v. City of N.Y., 411 F. App'x 378, 386 (2d Cir. 2011); Manganiello v. City of N.Y., 612 F.3d 149, 161 (2d Cir. 2010); Ramos v. City of N.Y., 298 F. App'x 84, 85 (2d

---

[20/]   See also, e.g., Hansel v. Brazell, 85 F. App'x 237, 238 (2d Cir. 2004); Boyd v. City of N.Y., 336 F.3d 72, 75 (2d Cir. 2003); Savino v. City of N.Y., 331 F.3d 63, 72 (2d Cir. 2003); Wims v. N.Y.C. Police Dep't, 10 Civ. 6128, 2011 WL 2946369 at *3 (S.D.N.Y. July 20, 2011); Anilao v. Spota, 774 F. Supp. 2d 457, 504 (E.D.N.Y. 2011); Pierre v. City of N.Y., No. 05-CV-5018, 2007 WL 2403573 at *8 (E.D.N.Y. Aug. 17, 2007); Winn v. McQuillan, 390 F. Supp. 2d at 390.

Cir. 2008); <u>Simmons</u> v. <u>N.Y.C. Police Dep't</u>, 97 F. App'x 341, 342 (2d Cir. 2004); <u>Hansel</u> v. <u>Brazell</u>, 85 F. App'x at 238; <u>Boyd</u> v. <u>City of N.Y.</u>, 336 F.3d at 76; <u>Rohman</u> v. <u>N.Y.C. Transit Auth.</u>, 215 F.3d 208, 215 (2d Cir. 2000).

   For a malicious prosecution claim to rise to a constitutional level under § 1983, there must also be a post-arraignment seizure.  <u>Jocks</u> v. <u>Tavernier</u>, 316 F.3d at 136; <u>see also</u>, <u>e.g.</u>, <u>Jean</u> v. <u>Montina</u>, 412 F. App'x 352 at 354; <u>Singer</u> v. <u>Fulton Cnty. Sheriff</u>, 63 F.3d 110, 116-17 (2d Cir. 1995), <u>cert. denied</u>, 517 U.S. 1189, 116 S. Ct. 1676 (1996).  New York law "'places a heavy burden on malicious prosecution plaintiffs . . . .'"  <u>Rothstein</u> v. <u>Carriere</u>, 373 F.3d at 282.

   "'[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York . . . .'"  <u>Manganiello</u> v. <u>City of N.Y.</u>, 612 F.3d at 161-62.[21/]  "The determination of probable cause in the context of malicious prosecution is essentially the same as for false arrest, 'except that [a claim for malicious prosecution] must be evaluated in light of the facts known or believed at the time the prosecution is initiated, rather than at the time of arrest.'"  <u>Danielak</u> v. <u>City of N.Y.</u>, No. 02-CV-2349, 2005 WL 2347095 at *10 (E.D.N.Y. Sept. 26, 2005), <u>aff'd</u>, 209 F. App'x 55 (2d Cir. 2006).[22/]  "Where . . . probable cause existed for the arrest itself, a plaintiff pursuing a malicious prosecution claim must establish that probable cause somehow 'dissipated' between the time of arrest and the commencement of the prosecution."  <u>Johnson</u> v. <u>City of N.Y.</u>, 08 Civ. 5277, 2010 WL 2292209 at *6 (S.D.N.Y. June 7, 2010).[23/]  "In order for probable

---

[21/]  Accord, <u>e.g.</u>, <u>Jean</u> v. <u>Montina</u>, 412 F. App'x at 354; <u>Hargroves</u> v. <u>City of N.Y.</u>, 411 F. App'x at 386.

[22/]  Accord, <u>e.g.</u>, <u>Espada</u> v. <u>Schneider</u>, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007); <u>Lovelace</u> v. <u>City of N.Y.</u>, No. 02-CV-5398, 2005 WL 552387 at *2 (E.D.N.Y. Mar. 9, 2005).

[23/]  Accord, <u>e.g.</u>, <u>Smith</u> v. <u>City of N.Y.</u>, 04 Civ. 3286, 2010 WL 3397683 at *9 (S.D.N.Y. Aug.
               (continued...)

cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact."  Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996).[24/]

### B.     Det. George is Granted Summary Judgment Because He had Probable Cause to Prosecute Gaston

In order to prevail on his malicious prosecution claim, Gaston needs to show that Det. George lacked probable cause to initiate the prosecution.  (See cases cited on pages 19-20 above.) As noted in Section II.B. above, Det. George had probable cause to arrest Gaston based on B.D.'s identifications of Gaston in the photo array and lineup.  Once there was probable cause for the arrest, Gaston would have to show that the probable cause dissipated between time of the the arrest and the initiation of the prosecution.  See, e.g., Johnson v. City of N.Y., 08 Civ. 5277, 2010 WL 2292209 at *6 (S.D.N.Y. June 7, 2010); see also cases cited on page 20 n.23 above.  Gaston does not allege

---

[23/]     (...continued)
27, 2010) ("Once probable cause to arrest is established, a claim for malicious prosecution is barred 'unless plaintiff can demonstrate that at some point subsequent to the arrest, additional facts came to light that negated probable cause.'");  Rae v. Cnty. of Suffolk, 693 F. Supp. 2d 217, 226 (E.D.N.Y. 2010) ("[I]n the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie." (quotations omitted));  Jouthe v. City of N.Y., No. 05-CV-1374, 2009 WL 701110 at *12 (E.D.N.Y. Mar. 10, 2009) ("Courts in this circuit have found that '[a]bsent new countervailing facts, probable cause for arrest establishes probable cause for prosecution.'");  Smith v. City of N.Y., 388 F. Supp. 2d 179, 186 (S.D.N.Y. 2005) ("Probable cause to arrest is a defense to a malicious prosecution claim unless, after the arrest, additional facts come to light that vitiate the probable cause.");  Williams v. City of N.Y., 02 Civ. 3693, 2003 WL 22434151 at *6 (S.D.N.Y. Oct. 23, 2003) ("Because there was probable cause to arrest plaintiff, and plaintiff has not introduced evidence to suggest that the defendants had different information available to them between the time of [plaintiff's] arrest and his grand jury indictment, defendants had probable cause to prosecute plaintiff . . . ."), aff'd, 120 F. App'x 388 (2d Cir. 2005).

[24/]     Accord, e.g., Husbands ex rel. Forde v. City of N.Y., 335 F. App'x 124, 128 (2d Cir. 2009); Coleman v. City of N.Y., 49 F. App'x 342, 345 (2d Cir. 2002); Johnson v. City of N.Y., 2010 WL 2292209 at *6.

that anything occurred between the arrest and prosecution that would negate probable cause.  (See Dkt. No. 28: Gaston Br. at 20-21.)[25/]  Accordingly, Det. George is entitled to summary judgment on Gaston's malicious prosecution claims.[26/]

## IV.  DET. GEORGE'S SUMMARY JUDGMENT MOTION ALSO IS GRANTED ON QUALIFIED IMMUNITY GROUNDS

Det. George argues that he is also entitled to summary judgment on Gaston's false arrest, false imprisonment and malicious prosecution claims on qualified immunity grounds.  (Dkt. No. 25: Defs. Br.at 14-15.)

Qualified immunity "shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); see, e.g., Stein v. Barthelson, 419 F. App'x 67, 69 (2d Cir. 2011); Wilson v. Aquino, 233

---

[25/]    While not arguing that any intervening facts occurred between arrest and prosecution to vitiate probable cause, Gaston contends that any probable cause that Det. George had to arrest Gaston is negated by Det. George's "bad faith" in: (1) ignoring the fact that Gaston had an accent and choosing "not to employ a voice identification test during the lineup"; (2) relying on "B.D.'s tenuous description of her attacker"; (3) assembling a suggestive lineup; (4) failing to investigate Gaston's alibi; and (5) failing to run a DMV check to see if Gaston had a driver's license or owned/registered a vehicle.  (Gaston Br. at 20-21.)  These claims were raised by Gaston to challenge Det. George's probable cause to arrest and have been rejected by this Court.  (See Section II.B. above.)

[26/]    As this Court finds that Det. George had probable cause to prosecute Gaston, it need not discuss the other elements of a malicious prosecution claim.  The Court notes, however, that while at least one court in this district has ruled that signing the criminal complaint is not enough to satisfy the initiation element, see, e.g, Watson v. Cieslak, 09 Civ. 2073, 2011 WL 446276 at *7 (S.D.N.Y. Jan. 5, 2011), report & rec. adopted, 2011 WL 476612 (S.D.N.Y. Feb. 9, 2011), the Second Circuit has made clear that, "[a]s a matter of law," an officer "'initiate[s]'" the prosecution by filing the complaint. Cameron v. City of N.Y., 598 F.3d 50, 63 (2d Cir. 2010); accord, e.g., Williams v. City of N.Y., 05 Civ. 10230, 2007 WL 2214390 at *10 (S.D.N.Y. July 26, 2007) ("It is well-settled . . . that signing and submitting complaints constitutes an initiation of a prosecution.").

F. App'x 73, 76 (2d Cir. 2007); <u>Jones</u> v. <u>Parmley</u>, 465 F.3d 46, 55 (2d Cir. 2006); <u>Holeman</u> v. <u>City of New London</u>, 425 F.3d 184, 189 (2d Cir. 2005); <u>Rogers</u> v. <u>City of Amsterdam</u>, 303 F.3d 155, 158 (2d Cir. 2002).[27/]

　　　　An officer who acts without probable cause is entitled to qualified immunity from a suit for false arrest or malicious prosecution if he can show that there was at least "'arguable probable cause,'" which "exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" <u>Escalera</u> v. <u>Lunn</u>, 361 F.3d 737, 743 (2d Cir. 2004).[28/]  "Thus, the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause; 'arguable probable cause' will suffice to confer qualified immunity for the arrest."

---

[27/]　　See also, e.g., <u>Kraft</u> v. <u>City of N.Y.</u>, 696 F. Supp. 2d 403, 418 (S.D.N.Y. 2010) (Chin, D.J.), aff'd, 441 F. App'x 24 (2d Cir. 2011); <u>Garcia</u> v. <u>Greco</u>, 05 Civ. 9587, 2010 WL 446446 at *5 (S.D.N.Y. Feb. 9, 2010); <u>Cotto</u> v. <u>Pabon</u>, 07 Civ. 7656, 2008 WL 4962986 at *9 (S.D.N.Y. Nov. 20, 2008) (Peck, M.J.); <u>Cerbelli</u> v. <u>City of N.Y.</u>, No. 99-CV-6846, 2008 WL 4449634 at *11 (E.D.N.Y. Oct. 1, 2008); <u>Whittle</u> v. <u>Westchester Cnty. Police Dep't</u>, 06 Civ. 3665, 2008 WL 919348 at *2 (S.D.N.Y. Mar. 28, 2008); <u>McCray</u> v. <u>City of N.Y.</u>, 03 Civ. 9685, 03 Civ. 9974, 03 Civ. 10080, 2007 WL 4352748 at *18 (S.D.N.Y. Dec. 11, 2007); <u>Yates</u> v. <u>City of N.Y.</u>, 04 Civ. 9928, 2006 WL 2239430 at *8 (S.D.N.Y. Aug. 4, 2006); <u>see generally</u> <u>Robinson</u> v. <u>Fischer</u>, 09 Civ. 8882, 2010 WL 5376204 at *7 (S.D.N.Y. Dec. 29, 2010) (Peck, M.J.); <u>Sudler</u> v. <u>Goord</u>, 08 Civ. 11389, 09 Civ. 6510, 2010 WL 4273277 at *7-8 (S.D.N.Y. Oct. 6, 2010) (Peck, M.J.), <u>report & rec. adopted</u>, 2011 WL 691239 (S.D.N.Y. Feb. 23, 2011).

[28/]　　Accord, e.g., <u>Pinter</u> v. <u>City of N.Y.</u>, 448 F. App'x 99, 103, 105 & n.6 (2d Cir. 2011); <u>Pacicca</u>, v. <u>Stead</u>, No. 10-1069, 2011 WL 5515954 at *1 (2d Cir. Nov. 14, 2011); <u>Crenshaw</u> v. <u>City of Mount Vernon</u>, 372 F. App'x 202, 205 (2d Cir. 2010); <u>Golio</u> v. <u>Suggs</u>, 285 F. App'x 773, 774 (2d Cir. 2008); <u>Guerrero</u> v. <u>Scarazzini</u>, 274 F. App'x 11, 12-13 (2d Cir. 2008); <u>Jenkins</u> v. <u>City of N.Y.</u>, 478 F.3d 76, 87 (2d Cir. 2007); <u>Morales</u> v. <u>City of N.Y.</u>, 209 F. App'x 75, 76 (2d Cir. 2006); <u>5 Borough Pawn, LLC</u> v. <u>Marti</u>, 753 F. Supp. 2d 186, 192 (S.D.N.Y. 2010); <u>Cotto</u> v. <u>Pabon</u>, 2008 WL 4962986 at *9; <u>McCray</u> v. <u>City of N.Y.</u>, 2007 WL 4352748 at *18;  <u>Chodkowski</u> v. <u>City of N.Y.</u>, 06 Civ. 7120, 2007 WL 2717872 at *5 (S.D.N.Y. Sept. 11, 2007); <u>Carter</u> v. <u>City of N.Y.</u>, 427 F. Supp. 2d 307, 323-24 (S.D.N.Y. 2004); <u>Jackson</u> v. <u>City of N.Y.</u>, 00 Civ. 1206, 2004 WL 895609 at *8 (S.D.N.Y. 2004).

Escalera v. Lunn, 361 F.3d at 743.[29/]  "'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause. . . . If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." Jenkins v. City of N.Y., 478 F.3d at 87.  Because qualified immunity is an affirmative defense, defendants bear the burden of showing that there was arguable probable cause.  See, e.g., Jackler v. Byrne, 658 F.3d 225, 242 (2d Cir. 2011), cert. denied, 2012 WL 603078 (Feb. 27, 2012); Varrone v. Bilotti, 123 F.3d 75, 78 (2d Cir. 1997) (citing Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S. Ct. 2727, 2736 (1982)); Weather v. City of Mount Vernon, 08 Civ. 0192, 2011 WL 1046165 at *8 (S.D.N.Y. Mar. 22, 2011); Rosen v. City of N.Y., 667 F. Supp. 2d 355, 361 (S.D.N.Y. 2009); Tatum v. City of N.Y., 06 Civ. 4290, 2009 WL 124881 at *11 (S.D.N.Y. Jan. 20, 2009).

As noted in Sections II.B. and III.B. above, Det. George had actual probable cause to arrest Gaston and initiate prosecution after B.D. identified Gaston in a photo array and lineup. Accordingly, since Det. George had actual probable cause but only need to have had arguable probable cause to be entitled to qualified immunity, Det. George  is entitled to summary judgment on Gaston's false arrest, false imprisonment and malicious prosecution claims on qualified immunity grounds.

---

[29/]    Accord, e.g., Barcomb v. Sabo, No. 07-CV-877, 2011 WL 1770795 at *11 (N.D.N.Y. May 9, 2011); Cotto v. Pabon, 2008 WL 4962986 at *9 (& cases cited therein); Rollins v. N.Y. State Div. of Parole, No. 03-CV-5952, 2007 WL 539158 at *5 (E.D.N.Y. Feb. 16, 2007); Payne v. Cnty. of Nassau, No. 03-CV-1929, 2005 WL 2179419 at *6 (E.D.N.Y. Sept. 9, 2005); Mura v. Erie Cnty. Sheriff Dep't, No. 03-CV-6093, 2005 WL 615754 at *4 (W.D.N.Y. Mar. 16, 2005); Jackson v. City of N.Y., 2004 WL 895609 at *8; see, e.g., Provost v. City of Newburgh, 262 F.3d 146, 160 (2d Cir. 2001) (The "arguable probable cause" standard "protects 'all but the plainly incompetent or those who knowingly violate the law.'").

## V.   GASTON'S REMAINING CLAIMS ARE DISMISSED AS ABANDONED

Gaston's complaint also raises a claim for negligent hiring, training and supervision claims against New York City.  (Dkt. No. 6: Am. Compl. ¶¶ 75-77.)  Gaston also alleges that Det. George violated due process and the equal protection clause and  discriminated against him in violation of 42 U.S.C.§ 1981.  (Am. Compl. ¶¶ 55, 58.)  Defendants moved for summary judgment on those claims (Dkt. No. 25: Defs. Br. at 9-10, 15-16), but Gaston failed to respond or even mention these claims in his opposition brief to defendants' summary judgment motion. (See generally Dkt. No. 28: Gaston Br.)[30/]  Therefore, these claims are dismissed as abandoned.  See, e.g., Quintero v. Rite Aid of N.Y., Inc., 09 Civ. 6084, 2011 WL 5529818 at*19 (S.D.N.Y. Nov. 10, 2011) ("Since [plaintiff] has failed to address her state law claims in any manner in the opposition to the motion for summary judgment, those claims are deemed abandoned, and summary judgment is granted to" defendant.); Jain v. McGraw-Hill Cos., 09 Civ. 6520, --- F. Supp. 2d. ----, 2011 WL 5120261 at *7  (S.D.N.Y. Oct. 28, 2011) ("Defendants' motion for summary judgment specifically addressed [plaintiff's] claims.  Plaintiff's opposition papers, however, responded to none of those arguments.  The Court therefore deems those six claims abandoned and grants summary judgment on them." (record citation omitted)).[31/]

---

[30/]   Gaston's only mention of his state law claims was to argue that if any federal claims survived summary judgment, the "Court should exercise its supplemental jurisdiction over plaintiff's state law claims."  (Gaston Br. at 25.)

[31/]   See also, e.g., Marache v. Akzo Nobel Coatings, Inc., 08 Civ. 11049, 2010 WL 908467 at *15 (S.D.N.Y. Mar. 12, 2010) (Peck, M.J.), report & rec. adopted, 2010 WL 3731124 (S.D.N.Y. Sept. 7, 2010); Stouter v. Smithtown Cent. Sch. Dist., 687 F. Supp. 2d 224, 236-37 (E.D.N.Y. 2010) (Claim asserted in complaint but not addressed in response to defendant's summary judgment motion is deemed abandoned.); Robinson v. Am. Int'l Group, Inc., 08 Civ. 1724, 2009 WL 3154312 at *4 & n.65 (S.D.N.Y. Sept. 30, 2009) (Plaintiff abandoned claims where she failed to address them in her opposition to defendant's summary
(continued...)

## CONCLUSION

For the reasons stated above, defendants' summary judgment motion (Dkt. No. 20)

is <u>GRANTED</u>.

SO ORDERED.

DATED:       New York, New York
             April 2, 2012

                                             _____
                                             **Andrew J. Peck**
                                             United States Magistrate Judge

Copies <u>ECF</u> to:       Paul V. Prestia, Esq.
                     Elizabeth N. Krasnow, Esq.

---

<sup>31/</sup>      (...continued)
        judgment motion. (citing cases)), <u>aff'd</u>, 396 F. App'x 781 (2d Cir. 2010); <u>Ostroski</u> v. <u>Town</u>
        <u>of Southold</u>, 443 F. Supp. 2d 325, 340 (E.D.N.Y. 2006) ("Because plaintiff's opposition
        papers did not address defendants' motion for summary judgment on this claim, the claim
        is deemed abandoned and summary judgment could be granted on that basis alone." (citing
        cases)); <u>Bellegar de Dussuau</u> v. <u>Blockbuster, Inc.</u>, 03 Civ. 6614, 2006 WL 465374 at *7
        (S.D.N.Y. Feb. 28, 2006) ("Because Plaintiff did not oppose Defendant's motion for
        summary judgment on this claim, summary judgment on the claim is granted."); <u>Diaz</u> v.
        <u>Weill Med. Ctr. of Cornell Univ.</u>, 02 Civ. 7380, 2004 WL 285947 at *20 (S.D.N.Y. Feb. 13,
        2004) (Peck, M.J.), <u>aff'd</u>, 138 F. App'x 362 (2d Cir. 2005); <u>Arias</u> v. <u>NASDAQ/AMEX Mkt.</u>
        <u>Grp.</u>, 00 Civ. 9827, 2003 WL 354978 at *13 (S.D.N.Y. Feb. 18, 2003) (Where plaintiff's
        summary judgment opposition "neither refute[d] nor even mention[ed]" defendant's
        argument for summary judgment on two of his claims, those claims dismissed as
        "abandoned."); <u>Bronx Chrysler Plymouth, Inc.</u> v. <u>Chrysler Corp.</u>, 212 F. Supp. 2d 233, 249
        (S.D.N.Y. 2002) (Lynch, D.J.) (Where plaintiff's summary judgment opposition papers
        "ma[d]e no argument in support of [one] claim <u>at all</u>," the court dismissed the claim as
        "abandoned."); <u>Douglas</u> v. <u>Victor Capital Grp.</u>, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998)
        (Stein, D.J. & Peck, M.J.) (Where plaintiff's opposition papers "never even mention[] any
        retaliation . . . claim in his brief or affidavit. . . . the Court deems all of the remaining claims
        in the complaint to be abandoned, and recommends that defendants be granted summary
        judgment dismissing these claims." (citing cases)).